UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------X

TERRI JOHNSON,

                Plaintiff,

      - against –

THE CITY OF NEW YORK, DET. KEVIN HOGAN,
POLICE OFFICERS JOHN AND JANE DOE #1-10,
individually and in their official
capacities, FOLLETT HIGHER EDUCATION
GROUP, INC., LAGENA SOLOMON, and JAMES
WILLIAMS,

                Defendants.
----------------------------------------X

FOR ELECTRONIC
PUBLICATION ONLY

**<u>MEMORANDUM & ORDER</u>**

06-CV-630 (KAM) (ALC)

MATSUMOTO, United States District Judge:

      Plaintiff Terri Johnson ("plaintiff" or "Johnson")
brings this action against the City of New York (the "City"),
Detective Kevin Hogan of the New York City Police Department
("NYPD") and unnamed police officers (together, the "City
Defendants"), Follett Higher Education Group, Inc. ("Follett"),
Lagena Solomon ("Solomon") and James Williams ("Williams")
(collectively, "defendants"), alleging federal civil rights
claims pursuant to 42 U.S.C. § 1983 and various state law tort
claims, all arising from plaintiff's allegedly unlawful arrest,
confinement and prosecution. Presently before the court are
defendants' motions for summary judgment, pursuant to Federal
Rule of Civil Procedure 56, seeking dismissal of plaintiff's
action. (Doc. Nos. 93 (Follett's motion), 99 (Williams's
motion), 100 (Solomon's motion), and 106 (the City Defendants'

motion). For the reasons set forth below, the City Defendants'
motion for summary judgment is granted in its entirety.
Further, the court declines to exercise supplemental
jurisdiction over plaintiff's remaining state law claims, which
are dismissed without prejudice.

**FACTUAL BACKGROUND**

The following facts, taken from the parties'
statements pursuant to Local Civil Rule 56.1, are undisputed
unless otherwise indicated. The court has considered whether
the parties have proffered admissible evidence in support of
their positions and has viewed the facts in a light most
favorable to the nonmoving plaintiff.

On January 31, 2005, plaintiff was employed by a
temporary employment agency as a cashier at a bookstore operated
by defendant Follett at the City University of New York, Queens
College. (Doc. No. 113, Declaration of Jessica Klotz ("Klotz
Decl."), Ex. E, Deposition of Terri Johnson taken on Mar. 3,
2008 ("Pl. Dep.") at 29-30; Doc. No. 108, City Defendants' Local
Civil Rule 56.1 Statement ("City Defs. 56.1 Stmt.") ¶ 2.) At
all relevant times, defendant Solomon was the bookstore's
assistant manager and defendant Williams was one of its security
guards. (Doc. No. 97, Follett's Local Civil Rule 56.1 Statement
("Follett 56.1 Stmt.") ¶¶ 3, 5.) On January 31, 2005, plaintiff
left his work shift before 9:00 p.m. and went home to Brooklyn

by bus.  (Pl. Dep. at 44-45; *see also* Klotz Decl., Ex. E,
Criminal Trial Transcript ("Trial Tr.") at 49-50.)

On or about the late evening of January 31, 2005, or
the early morning of February 1, 2005, Solomon and Williams left
the bookstore to deposit bags containing a portion of the
bookstore's daily proceeds in the night depository of a nearby
bank.  (Trial Tr. at 31, 54-55, 57; *see also* Doc. No. 109,
Declaration of Susan Scharfstein ("Scharfstein Decl."), Ex. F,
Complaint Report dated Feb. 1, 2005; City Defs. 56.1 Stmt. ¶ 6.)[1]
They drove to the bank in Solomon's vehicle and Williams showed
Solomon a shorter route than they had used on previous trips to
the bank.  (Klotz Decl., Ex. I, Deposition of Lagena Solomon
taken on Mar. 19, 2008 ("Solomon Dep.") at 66-67.)  When Solomon
and Williams arrived at the bank, they observed a man standing
at a nearby bus stop.  (*Id.* at 76; *see also* Klotz Decl., Ex. H,
Deposition of James Williams taken on Apr. 17, 2008 ("Williams
Dep.") at 45.)

After arriving at the bank, Solomon and Williams were
accosted by the man they previously observed at the bus stop,
who demanded money and displayed a gun.  (City Defs. 56.1 Stmt.
¶ 7; Trial Tr. at 58-59; Solomon Dep. at 79.)  Both Solomon and

---

[1] The City Defendants' Rule 56.1 Statement erroneously states at
paragraphs 4-6 that the events giving rise to this action
allegedly occurred in 2006.  Although these paragraphs are
admitted in plaintiff's responsive Rule 56.1 statement (Doc. No.
114), it is undisputed that the relevant period is 2005.

Williams testified that the man (the "robber" or "assailant") apparently ran to the bank from the nearby bus stop. (Solomon Dep. at 79; Williams Dep. at 47-49.) The man pushed Williams against a wall, displayed a gun and replaced it into his waistband, and seized the deposit bags. (Solomon Dep. at 81, 86.) The man then asked Solomon where her cell phone was, to which Solomon responded "in the car[,]" and patted down Solomon's coat. (*Id.* at 87-88.) Solomon testified that the assailant stood very close to her and that his face was only partially concealed by a scarf from the bottom of his nose. (Doc. No. 102, Solomon's Local Rule 56.1 Statement ("Solomon 56.1 Stmt.") ¶¶ 86-88; Solomon Dep. at 97-98.) Solomon also noted that the man appeared to have difficulty with his leg and to shift his weight off the leg by shaking it. (Solomon Dep. at 100-02.) The man did not pat down Williams or ask him where his cell phone was. (*See id.* at 93.) Neither Williams nor Solomon attempted to resist or defend against the robbery. (*See id.* at 90.) The assailant fled with the money. (*Id.* at 91-92.)

Subsequently, Solomon and Williams returned to Solomon's vehicle and called the police to report the crime. (*Id.* at 93; City Defs. 56.1 Stmt. ¶ 12.) Solomon testified that she told Williams that she believed that the assailant was plaintiff. (Solomon Dep. at 93.) Solomon was shocked and frightened by the events. (*Id.* at 92.)

Police officers responded to the scene of the crime.
(Defs. 56.1 Stmt. ¶ 13.)  The officers interviewed Solomon and
Williams and obtained details about the crime and suspect.
(Solomon Dep. at 104-05.)  Solomon described the assailant as
5'8'' tall with a "goldish" jacket.  (*Id.* at 105.)  According to
Solomon, Williams described the assailant as 5'11'' with a black
jacket.  (*Id.*)  During the two-to-three minute conversation with
the first two responding officers, Solomon did not advise the
officers that she thought that plaintiff was the assailant
because Williams gave a different description and she thought
that Williams might have been involved in the crime.  (*Id.* at
106, 108-09; *see also* City Defs. 56.1 Stmt. ¶ 10; Trial Tr. at
17.)  Plainclothes police officers then drove Solomon around for
5 to 10 minutes to canvass the neighborhood and they returned to
the scene.  (Solomon Dep. at 106-07.)  Solomon did not alert the
officers to her belief that plaintiff had committed the robbery
because she was scared that plaintiff would find out that she
thought he robbed her.  (*Id.* at 108-10.)  Defendant Williams did
not have any further contact or communication with the police
regarding the robbery investigation.  (Doc. No. 99, Williams's
Local Civil Rule 56.1 Statement ("Williams 56.1 Stmt.") ¶¶ 38-
39.)

The robbery investigation was assigned to Detective
Kevin Hogan of the 107th Precinct Detective Unit.  (City Defs.

56.1 Stmt. ¶ 16.)  On February 2, 2005, Detective Hogan
conducted a telephone interview with Solomon to ascertain
details about the robbery, obtain a description of the subject
and schedule an in-person meeting.  (*Id.* ¶ 17; Trial Tr. at 81,
177.)  During the telephone interview, Solomon described the
suspect's gender, ethnicity, height, weight and clothing.
(Trial Tr. at 177-78; Doc. No. 101, Declaration of Steven C.
Stern ("Stern Decl."), Ex. C, Detective Division report ("DD-5
Report").)  Solomon indicated that the suspect was 5'9'' tall,
weighed 200lbs, and wore a gold hooded coat with a dark scarf
that concealed part of his face.  (DD-5 Report.)  She did not
provide the suspect's name.  (*Id.*; Trial Tr. at 178.)

        Detective Hogan met with Solomon on February 6, 2005.
(*Id.* at 178; City Defs. 56.1 Stmt. ¶ 22; DD-5 Report.)  During
the meeting, Solomon was shown various mug shots, however, she
did not identify a suspect from the mug shots.  (Solomon Dep. at
139; DD-5 Report.)  During the meeting, Solomon identified
plaintiff as the individual that committed the armed robbery on
February 1, 2005, of which Solomon was a victim.  (City Defs.
56.1 Stmt. ¶ 23; DD-5 Report; Solomon Dep. at 134.)  Solomon
testified that this was the first time she told any law
enforcement officer that she believed that plaintiff, a co-
worker, was the assailant.  (*See* Solomon Dep. at 134, 138; DD-

5.)  She also mentioned to Detective Hogan her suspicion that Williams "had something to do" with the robbery.  (*Id.* at 138.)

Following the February 6, 2010 meeting with Solomon, Detective Hogan took additional steps to investigate the crime. On February 7, 2005, Detective Hogan visited the scene of the robbery and requested surveillance videos from the bank.  (DD-5.)  Detective Hogan was unable to recover any surveillance video of the incident.  (*Id.*; Klotz Decl., Ex. J, Deposition of Kevin Hogan taken on Mar. 19, 2008 ("Hogan Dep.") at 32.)  On February 8, 2005, Detective Hogan contacted Follett to obtain a list of employees.  (Hogan Dep. at 32-33; DD-5; City Defs. 56.1 Stmt. ¶ 25.)  On February 16, 2008, Detective Hogan contacted the temporary employment agency that had placed plaintiff at the bookstore to obtain information concerning plaintiff.  (DD-5; *see also* Hogan Dep. at 34; City Defs. 56.1 Stmt. ¶ 28.) Detective Hogan also ran various background checks on the plaintiff.  (City Defs. 56.1 Stmt. ¶ 29.)  Additionally, Detective Hogan prepared a photo array with a photograph of plaintiff and other similar images.  (DD-5; Hogan Dep. at 35-36.)  Detective Hogan testified that he did so to "make sure it's, in fact, Terri Johnson who I had information on."  (Hogan Dep. at 35.)  Hogan then requested that Solomon appear at the police precinct to view the photo array.  (City Defs. 56.1 Stmt. ¶ 30.)  On February 17, 2005, Solomon identified plaintiff as

the perpetrator of the February 1, 2005 armed robbery. (Solomon Dep. at 139-40; Hogan Dep. at 37; DD-5.) Defendant Williams neither spoke with Detective Hogan, nor identified plaintiff as the perpetrator of the robbery. (Williams 56.1 Stmt. ¶¶ 43-44.)

Detective Hogan testified that based upon the information available to him, namely, the information provided by Solomon, Hogan decided to arrest plaintiff. (Hogan Dep. at 59-60; *see also* Williams 56.1 Stmt. ¶ 45.) Plaintiff was arrested on February 24, 2005 and remained in custody until the conclusion of his criminal trial. (City Defs. 56.1 Stmt. ¶ 35; Solomon 56.1 Stmt. ¶ 137.)

Following the arrest, Hogan signed a criminal court affidavit. (Scharfstein Decl., Ex. K.) The affidavit states, *inter alia*, that Hogan was informed by Solomon that on or about February 1, 2005, Terri Johnson approached Solomon, displayed a firearm, took from Solomon cash and checks totaling approximately $35,000 and fled the scene of the crime, in violation New York Penal Law § 160.15(4).[2] (*See id.*)

---

[2] New York Penal Law § 160.15 states, in pertinent part,

> A person is guilty of robbery in the first degree when he forcibly steals property and when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime: [. . .]

> 4. Displays what appears to be a . . . firearm . . . .

Thereafter, Detective Hogan and Solomon met with the District Attorney's Office, and Solomon spoke with an Assistant District Attorney ("ADA") about the crime. (Solomon Dep. at 140-41; City Defs. 56.1 Stmt. ¶¶ 38, 40.) Detective Hogan did not speak during the meeting, except for advising Solomon that the bank did not have a functioning security camera. (Solomon Dep. at 141-42.) Solomon advised the ADA that plaintiff perpetrated the February 1, 2005 robbery. (*Id.* at 167; City Defs. 56.1 Stmt. ¶ 41.) Following her statement to the District Attorney's Office, a state court judge issued temporary orders of protection prohibiting any contact or communication by plaintiff with Solomon. (City Defs. 56.1 Stmt. ¶ 44; Scharfstein Decl., Ex. L, Protection Orders.) The orders of protection were in effect from February 25, 2005 through April 7, 2005. (City Defs. 56.1 Stmt. ¶¶ 45-46.)

On March 31, 2005, plaintiff was indicted by a grand jury on one count of first-degree robbery. (City Defs. 56.1 Stmt. ¶ 43; Scharfstein Decl., Ex. M, Indictment.) Defendant Solomon testified before the grand jury which indicted plaintiff. (City Defs. 56.1 Stmt. ¶ 50.) Williams did not testify before the grand jury. (Williams 56.1 Stmt. ¶ 46.) On June 7, 2005, a state court judge issued a decision and order denying a defense motion to dismiss the indictment, finding that there was "legally sufficient evidence adduced to establish the

commission by the defendant of the offense charged in the indictment." (Scharfstein Decl., Ex. O, Order dated 6/7/05; City Defs. 56.1 Stmt. ¶¶ 48-49.)

Solomon, Williams and Detective Hogan testified at plaintiff's criminal trial. (City Defs. 56.1 Stmt. ¶¶ 49-50; *see* Trial Tr. at 144.) At trial, Solomon testified, *inter alia*, that plaintiff perpetrated the February 1, 2005 armed robbery. (*Id.* ¶ 51.) By contrast, Williams did not identify plaintiff as the perpetrator of the armed robbery. (Williams 56.1 Stmt. ¶ 48.) Detective Hogan testified at trial concerning his investigation of the crime. Plaintiff was acquitted of the criminal charges on December 14, 2005. (City Defs. 56.1 Stmt. ¶ 53.) Defendant was released from custody on December 15, 2005. (Solomon 56.1 Stmt. ¶ 137.)

## DISCUSSION

### A. Summary Judgment Standard

A court may grant summary judgment only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). "A fact is 'material' for these purposes when it 'might affect the outcome of the suit under the governing law.'" *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (quoting *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Moreover, no
genuine issue of material fact exists "unless there is
sufficient evidence favoring the nonmoving party for a jury to
return a verdict for that party.  If the evidence is merely
colorable, . . . or is not significantly probative, . . .
summary judgment may be granted." *Anderson*, 477 U.S. at 249-50
(internal citations omitted).

The moving party carries the burden of demonstrating
the absence of a genuine issue of material fact.  *Celotex Corp.
v. Catrett*, 477 U.S. 317, 323 (1986).  The court must construe
the facts in the light most favorable to the nonmoving party and
all reasonable inferences and ambiguities must be resolved
against the moving party.  *Flanigan v. General Elec. Co.*, 242
F.3d 78, 83 (2d Cir. 2001).  Nevertheless, the nonmoving party
may not rest "merely on allegations or denials" but must instead
"set out specific facts showing there is a genuine issue for
trial."  Fed. R. Civ. P. 56(e)(2).  Further, "the nonmoving
party must come forward with admissible evidence sufficient to
raise a genuine issue of fact for trial in order to avoid
summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140,
145 (2d Cir. 2008) (citations omitted).

**B. Federal Law Claims against the City Defendants**

Plaintiff brings this action against the City
Defendants pursuant to 42 U.S.C. § 1983 ("Section 1983") for the

alleged deprivation of his Constitutional rights.[3]  Section 1983

provides, in relevant part, as follows:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any
> State . . . subjects, or causes to be subjected,
> any citizen of the United States or other person
> within the jurisdiction thereof to the
> deprivation of any rights, privileges, or
> immunities secured by the Constitution and laws,
> shall be liable to the party injured in an action
> at law, suit in equity, or other proper
> proceeding for redress . . . .

42 U.S.C. § 1983.

### a. Count One — Deprivation of Federal Civil Rights

Plaintiff alleges generally that the City Defendants

violated his rights under the "First, Fourth, Fifth, Eighth, and

Fourteenth Amendments to the Constitution" in violation of

Section 1983.  (Doc. No. 1, Complaint ("Compl.") ¶ 30.)

Although the City Defendants seek dismissal of all claims,

neither party provides any substantive argument regarding the

plaintiff's first cause of action for the alleged "deprivation

of federal civil rights" asserted in Count One of the Complaint.

Notwithstanding, the claim must be dismissed.

Section 1983 "is not itself a source of substantive

rights, but merely provides a method for vindicating federal

rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386,

393-94 (1979) (internal quotation marks and citation omitted).

---

[3] Plaintiff asserts solely pendent state law claims against
defendants Follett, Solomon and Williams.

Accordingly, plaintiff cannot proceed on a generalized theory because more specific constitutional provisions, *e.g.*, the Fourth Amendment, provide an explicit source of constitutional protection for his alleged injuries relating to his claimed false arrest and malicious prosecution. *See id.*, at 395; *Washington v. City of New York*, No. 05-CV-8884, 2009 U.S. Dist. LEXIS 47488, *31-32 (S.D.N.Y. June 5, 2009); *Diodati v. City of Little Falls*, No. 04-CV-446, 2007 U.S. Dist. LEXIS 4322, at *19 (N.D.N.Y. Jan. 18, 2007) (granting summary judgment dismissing general deprivation of federal rights claim where a specific constitutional provision provided an explicit source of constitutional protection for her injuries relating to her claimed false arrest). Accordingly, Count One is dismissed.

### b. Count Two — False Arrest

The City Defendants move for summary judgment as to plaintiff's claims for false arrest on the grounds that there was probable cause for plaintiff's arrest. (Doc. No. 107, City Defendants' Memorandum of Law ("City Defs. Mem.") at 7-9.) The Second Circuit has held that "[t]he existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (internal quotation marks and citation omitted); *see Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir.

1995) ("There can be no federal civil rights claim for false arrest where the arresting officer had probable cause."); *Carthew v. County of Suffolk*, No. 07-CV-4209, 2010 U.S. Dist. LEXIS 44384, at *14 (E.D.N.Y. May 6, 2010). The elements of false arrest under Section 1983 are substantially the same as the elements under New York law and their analysis is identical. *Boyd v. City of New York*, 336 F.3d 72, 75 (2d Cir. 2003).

"The requirement of probable cause does not create a high bar for law enforcement." *Sforza v. City of New York*, No. 07-CV-6122, 2009 U.S. Dist. LEXIS 27358, at *40 (S.D.N.Y. Mar 31, 2009). "In general, probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant*, 101 F.3d at 852 (citations omitted). Significantly, the "validity of an arrest does not depend upon an ultimate finding of guilt or innocence." *Peterson v. County of Nassau*, 995 F. Supp. 305, 313 (E.D.N.Y. 1998) (citing *Pierson v. Ray*, 386 U.S. 547, 555, (1967)); *see also Johnson v. City of New York*, No. 08-CV-5277, 2010 U.S. Dist. LEXIS 55315, at *13 (S.D.N.Y. July 7, 2010) ("a criminal acquittal has no res judicata effect in the context of a subsequent civil suit brought against the City of individual police officers. More importantly, an acquittal has

no bearing on the issue of whether probable cause existed for
the arrest which must [be] determined based on the totality of
the circumstances at the time of the arrest . . . .") (citations
omitted). Rather, the court looks only to the information that
the arresting officer had at the time of the arrest. *Id.*, at
*12 (citation omitted). "Moreover, a determination of probable
cause is based upon the 'totality of the circumstances . . . .'"
*Carthew*, 2010 U.S. Dist. LEXIS 44384, at *15 (quoting *Calamia v.
New York*, 879 F.2d 1025, 1032 (2d Cir. 1989)). Whether probable
cause existed may be determinable as a matter of law where there
is no dispute as to the pertinent events and the knowledge of
the officers. *See Weyant*, 101 F.3d at 852 (citation omitted).

       Here, the undisputed evidence supports a finding that
Detective Hogan had probable cause to arrest plaintiff.
Plaintiff was arrested following an investigation by Detective
Hogan which included, among other things, at least two
conversations with Solomon. During the first meeting, which
occurred by telephone on February 2, 2005, Detective Hogan
obtained from Solomon details about the armed robbery and a
description of the suspect. (City Defs. 56.1 Stmt. ¶ 17; Trial
Tr. at 81, 177; DD-5 Report.) Solomon advised Detective Hogan
that the suspect was 5'9'' tall, weighed 200lbs, and wore a gold
hooded coat with a dark scarf which concealed part of his face.
(DD-5 Report.) Subsequently, when Solomon and Detective Hogan

met in person on February 6, 2005, Solomon identified plaintiff as the assailant. (City Defs. 56.1 Stmt. ¶ 23; DD-5 Report; Solomon Dep. at 134.) Thereafter, Detective Hogan attempted to pursue other avenues of investigation, such as obtaining surveillance video from the bank at which the robbery occurred and contacting Williams, the other eyewitness-victim, which efforts were unsuccessful. (DD-5; Hogan Dep. at 32.) Additionally, Detective Hogan prepared a photo array with a photograph of plaintiff and other similar images, from which Solomon identified plaintiff. (Hogan Dep. at 37; DD-5; Solomon Dep. at 139-40.) Based upon this information, Detective Hogan decided to arrest plaintiff. (Hogan Dep. at 59-60; *see also* Williams 56.1 Stmt. ¶ 45.)

Plaintiff contends that Solomon's credibility is sufficiently doubtful to create a genuine issue of material fact for trial. (Doc. No. 119, Plaintiff's Memorandum in Opposition ("Pl. Mem.") at 8.) Specifically, plaintiff argues that Solomon's varying descriptions of the assailant, coupled with her identification of plaintiff five days after the robbery, required that Detective Hogan investigate and corroborate further Solomon's story. (*Id.* at 8-9) (citing *Corona v. Lunn*, No. 00-CV-7330, 2002 WL 550963, at *7 (S.D.N.Y. Apr. 11, 2002).) This argument fails.

Even assuming that Solomon's descriptions of the assailant differed from plaintiff's physical characteristics, it is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness, "unless circumstances raise doubt as to the person's veracity." *Curley v. Village of Suffern*, 268 F.3d 65, 69-70 (2d Cir. 2001); *see Miloslavsky v. AES Eng'g Soc'y, Inc.*, 808 F. Supp. 351, 355 (S.D.N.Y. 1992). Indeed, "[t]he veracity of citizen complaints who are the victims of the very crime they report to the police is assumed." *Miloslavsky*, 808 F. Supp. at 355 (citing *Adams v. Williams*, 407 U.S. 143, 146-47 (1972)). Further, Detective Hogan confirmed Solomon's identification of plaintiff by requesting that Solomon identify plaintiff in a photo array. "[I]t cannot be doubted that the actual identification . . . by the victim through photographs goes beyond mere suspicion and would . . . be sufficient to warrant a prudent man in believing that [the identified individual] had committed . . . an offense. Even if a victim is hospitalized and under the influence of medication," when the victim identifies a "photo from an array, this provide[s] the police with probable cause to arrest . . . ." *Newton v. City of New York*, 640 F. Supp. 2d 426, 441-42 (S.D.N.Y. 2009) (internal quotation marks and citations omitted; alternations in original) (police officer defendants were

entitled to summary judgment on the plaintiff's false arrest claim because identifications made by victim and eyewitness from photo arrays provided probable cause to arrest plaintiff).

Moreover, plaintiff's reliance on *Corona v. Lunn* is inapposite. Plaintiff correctly observes that the *Corona* court found the existence of probable cause for an arrest only after police officers corroborated a sexual assault victim's story and asked her to explain discrepancies in her statements to investigators. *Id.*, 2002 WL 550963, at *7. There, however, the victim initially denied any sexual contact with the plaintiff and later explained her reason for the denial after additional information led the officers to believe that the sexual assault occurred notwithstanding the victim's initial denial. *Id.* at *2, 7. The instant facts are distinguishable because Detective Hogan had no reason to question Solomon's veracity. Moreover, plaintiff does not proffer any admissible evidence to indicate that Solomon had any reason to falsify any facts asserted.

Where, as here, Detective Hogan had a reasonable basis for believing there was probable cause to arrest the plaintiff, he was not required to "explore and eliminate every theoretically plausible claim of innocence before making an arrest." *See Curley*, 268 F.3d at 70 (quoting *Ricciuti v. New York City Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997)) (internal quotation marks and alteration omitted). The court

notes that probable cause may be based on mistaken information, so long as the police, as here, acted reasonably and in good faith.  *See Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994) (mistaken identity of perpetrator).  Because the undisputed evidence supports a finding that there was probable cause to arrest plaintiff, and because no claim for false arrest can exist where the arresting officer had probable cause, *see Weyant*, 101 F.3d at 852, the court grants the City Defendants' motion for summary judgment on plaintiff's Section 1983 false arrest claim.

### c. Count Three — Malicious Prosecution

"[T]he elements of an action for malicious prosecution are (1) the initiation of a proceeding, (2) its termination favorably to plaintiff, (3) lack of probable cause, and (4) malice."  *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003) (quoting *Colon v. City of New York*, 60 N.Y.2d 78, 82 (1983)); *see also Rothstein v. Carriere*, 373 F.3d 275, 282 (2d Cir. 2004) (citations omitted).  The elements of malicious prosecution under Section 1983 are substantially the same as claims for malicious prosecution under New York law.  *See Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003).

There is no dispute that a prosecution was initiated against plaintiff,[4] and it terminated in his favor; thus, the first two elements are satisfied.  Instead, the parties dispute the latter two elements:  probable cause and malice.  In seeking summary judgment on plaintiff's malicious prosecution claim, Detective Hogan argues that to the extent that he "initiated" plaintiff's prosecution, he is not liable on the claim because there was probable cause to prosecute plaintiff.  (*See* Def. Mem. at 11-12.)

"The absence of probable cause is an essential element of a claim for malicious prosecution.  Although a grand jury indictment gives rise to a presumption that probable cause exists and a claim for malicious prosecution in relation to the crimes described in the indictment thereby is defeated, . . . the presumption may be rebutted by evidence of various wrongful acts on the part of police: If plaintiff is to succeed in his malicious prosecution action after he has been indicted, he must establish that the indictment was produced by fraud, perjury, the suppression of evidence or other police conduct undertaken

---

[4] Detective Hogan argues that he did not "initiate" plaintiff's prosecution to the extent that he merely reported the crime, signed a criminal court affidavit and gave testimony in connection with the prosecution.  (Def. Mem. at 11.)  The parties, however, agree that Detective Hogan may be liable for malicious prosecution if he deliberately misled the prosecutor or grand jury, withheld evidence or otherwise acted in bad faith.  (*Id.; see also* Pl. Mem. at 11-12.)  *See Rothstein*, 373 F.3d at 282-83.

in bad faith." *McClellan v. Smith*, 439 F.3d 137, 145 (2d Cir.
2006) (internal quotation marks and citations omitted) (vacating
summary judgment dismissal of plaintiff's malicious prosecution
claim where the factual issues surrounding the plaintiff's
indictment were sharply disputed, and where there was an
evidentiary basis to conclude that the grand jury indictment
could have been procured by fraud, perjury or the testifying
officer's personal animus toward the plaintiff).  Plaintiff
bears the burden of proof "in rebutting the presumption of
probable cause that arises from the indictment." *Savino*, 331
F.3d at 73.

        Here, plaintiff contends that Detective Hogan is
liable for malicious prosecution because he allegedly "withheld"
from prosecutors and the grand jury "vital exculpatory
information that defendant Solomon had originally given a
description of the robber that could not possibly be plaintiff."
(Pl. Mem. at 12.)  Contrary to plaintiff's assertion, however,
plaintiff has presented no admissible evidence that Detective
Hogan "withheld" information from the prosecutor or grand jury,
despite plaintiff's opportunity to obtain such information
through discovery.[5]  Plaintiff offers only his speculative

---

[5] During Detective Hogan's deposition, plaintiff's counsel
inquired of Detective Hogan's testimony before the grand jury.
(Hogan Dep. at 51-52.)  Defense counsel objected on the grounds
that grand jury proceedings are secret and sealed under New York

asserting that the grand jury indictment was procured as a result of conduct undertaken by Detective Hogan in bad faith. *Cf. Savino*, 331 F.3d at 73 (holding that the district court "erroneously shifted this burden to defendants by permitting [plaintiff] to rebut the presumption of probable cause with mere conjecture and surmise that his indictment was procured as a result of conduct undertaken by the defendants in bad faith.") (internal quotation marks and citation omitted). Plaintiff proffers no evidence regarding Detective Hogan's grand jury testimony or that his role in plaintiff's prosecution involved anything other than disclosing the information within his

law, unless and until plaintiff obtains an order unsealing the testimony. (*Id.*) Plaintiff's counsel declined to seek judicial intervention to resolve their dispute regarding whether Detective Hogan could testify concerning his own grand jury testimony, if any. The court observes that New York law permits a witness to disclose his own grand jury testimony. *See* New York Crim. Proc. Law § 190.25(4)(a) ("Grand jury proceedings are secret, and no grand juror, or other person specified in subdivision three of this section or section 215.70 of the penal law, may, except in the lawful discharge of his duties or upon written order of the court, disclose the nature or substance of any grand jury testimony, evidence, or any decision, result or other matter attending a grand jury proceeding. . . . *Nothing contained herein shall prohibit a witness from disclosing his own testimony.*") (emphasis added); New York Penal Law § 215.70 ("A person is guilty of unlawful grand jury disclosure when, being . . . a police officer . . . or a public officer or public employee, he intentionally discloses to another the nature or substance of any grand jury testimony, or any decision, result or other matter attending a grand jury proceeding which is required by law to be kept secret, except in the proper discharge of his official duties or upon written order of the court. *Nothing contained herein shall prohibit a witness from disclosing his own testimony.*") (emphasis added).

knowledge — namely, what he learned from speaking with Solomon, who also met with the Assistant District Attorney and testified before the grand jury — and signing a criminal court affidavit (Scharfstein Decl., Ex. K). Further, Solomon's eyewitness account and identification of the plaintiff provided an ample basis upon which to prosecute plaintiff. Simply put, there is no evidence that Detective Hogan acted inappropriately or in bad faith, withheld, misrepresented or falsified evidence, or otherwise acted maliciously. Accordingly, the court grants the City Defendants' motion for summary judgment on plaintiff's Section 1983 malicious prosecution claim.

### d. Count Four — Malicious Abuse of Process

"The torts of malicious prosecution and abuse of process are very similar in nature." *Burke v. Cicero Police Dep't*, No. 07-CV-624, 2010 U.S. Dist. LEXIS 31414, at *23 (N.D.N.Y. Mar. 31, 2010) (citing *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994)). "While malicious prosecution concerns the improper issuance of process, the gist of abuse of process is the improper use of process after it is regularly issued." *Cook*, 41 F.3d at 80 (internal quotation marks and citation omitted). "Abuse of process is the use of 'legal process to attain some collateral objective . . . .'" *Burke*, 2010 U.S. Dist. LEXIS 31414, at *23 (quoting *Board of Educ. of Farmingdale Union Free Sch. Dist. v. Farmingdale Classroom Teachers Ass'n,*

*Inc.*, 38 N.Y.2d 397, 402 (1975)). "Both malicious prosecution and abuse of process are recognized claims under section 1983." *Id.* (citing *Cook*, 41 F.3d at 80). As with plaintiff's false arrest and malicious prosecution claims against the City Defendants, the court looks to the New York law of abuse of process for the elements of this Section 1983 claim where, as here, the underlying conduct occurred in New York. *See Cook*, 41 F.3d at 80.

"Pursuant to New York Law, an abuse of process claim lies against a defendant who '(1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process.'" *Burke*, 2010 U.S. Dist. LEXIS 31414, at *23-24 (quoting *Cook*, 41. F.3d at 80). "The crux of a malicious abuse of process claim is the collateral objective element. To meet this element, a plaintiff must prove not that defendant acted with an improper motive, but rather an improper purpose — that is, 'he must claim that [the defendant] aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution.'" *Douglas v. City of New York*, 595 F. Supp. 2d 333, 344 (S.D.N.Y. 2009) (Chin, J.) (quoting *Savino*, 331 F.3d at 76).

Here, plaintiff argues that under the totality of the circumstances, a reasonable jury could conclude that Detective "Hogan had the collateral objective of making an arrest while doing the absolute minimum work possible." (Pl. Mem. at 19.) Plaintiff does not, however, cite to any legal authority for the proposition that "doing the absolute minimum work possible" is a collateral objective sufficient to warrant liability for abuse of process. (*See id.*) Instead, case law cited by the City Defendants indicates otherwise. (*See* Doc. No. 110, City Defendants' Reply Memorandum of Law ("City Defs. Reply Mem.") at 8.) *See, e.g., Blair v. City of New York*, No. 03-CV-1485, 2009 U.S. Dist. LEXIS 29300, at *27 (E.D.N.Y. Mar. 31, 2009) ("Plaintiff's only argument in support of his claim is that officers acted with an improper motive - that is, to close the case with as little work as possible. This improper motive alone, without an improper purpose, will not support a malicious abuse of process claim."); *see also Douglas*, at 595 F. Supp. 2d 344 (allegation that plaintiff was arrested so that defendant officers could meet arrest quotas and thereby ensure the security of their jobs was insufficient to establish an abuse of process claim). Because plaintiff has failed to proffer any admissible evidence that gives rise to an inference of an improper collateral objective on the part of Detective Hogan, the court grants the City Defendants' motion for summary

judgment on plaintiff's Section 1983 malicious abuse of process claim.

### e. Count Five — Right to Fair Trial

The City Defendants next move for summary judgment on plaintiff's fifth cause of action, which alleges that plaintiff was denied the right to a fair trial because defendants "misled" the grand jury, trial judge and prosecutors by "providing false testimony throughout [plaintiff's] criminal proceedings." (Compl. ¶ 59.)  In opposition to the City Defendants' motion for summary judgment, plaintiff contends that, notwithstanding his acquittal, there is sufficient evidence from which a jury could find that Detective Hogan "misled and deceived the prosecutor and the judge by failing to divulge vital exculpatory information."  (*See* Pl. Mem. at 26.)

"When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983."  *Ricciuti*, 124 F.3d at 130 (citations omitted) (holding that police officer defendants were not entitled to qualified immunity where a reasonable jury could find that the officers conspired to fabricate and forward to prosecutors "a known false confession almost certain to

influence a jury's verdict."); *see also Jocks*, 316 F.3d at 138
(holding that fabrication of evidence by police is actionable
under § 1983). A plaintiff need not show that he was convicted
or that a trial took place. *See Ricciuti*, 124 F.3d at 127 (all
criminal charges dismissed by court prior to trial).

Here, plaintiff has failed to proffer any admissible
evidence to indicate that Detective Hogan falsified information
or otherwise "misled and deceived" the prosecutor, judge or
jury. (*See* Pl. Mem. at 26.) Other than claiming generally that
Detective Hogan failed "to divulge vital exculpatory
information" (*id.*), plaintiff fails to identify any specific
exculpatory information that Detective Hogan allegedly withheld.
Nor does the evidence indicate that Detective Hogan withheld any
information regarding Solomon's varying descriptions of the
assailant. (*See id.* at 12.) Further, there is no evidence to
indicate that Detective Hogan falsified evidence or otherwise to
suggest evidence of falsification. *Cf. Zahrey v. Coffey*, 221
F.3d 342, 352-54 (2d Cir. 2000) (where fabricated evidence was
put before a grand jury, "it was at least reasonably foreseeable
that . . . [plaintiff] would be indicted and arrested");
*Ricciuti*, 124 F.3d at 130 (summary judgment on fair trial claim
should have been denied where "a reasonable jury could find . .
. that defendants . . . foward[ed] to prosecutors a known false
confession almost certain to influence a jury's verdict").

Accordingly, the court grants the City Defendants' motion for summary judgment on plaintiff's fair trial claim.[6]

### f. Count Six — Municipal Liability

A municipality may not be held liable under Section 1983 for alleged unconstitutional actions by its employees below the policy-making level solely upon the basis of *respondeat superior*. *See Monell v. Department of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978); *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998). To impose liability under Section 1983 on a municipality ("*Monell* claim") for the acts of its employees, a plaintiff must "plead and prove . . . (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3)

---

[6] Detective Hogan argues that he is entitled to qualified immunity for all claims arising from plaintiff's arrest and prosecution. (City Defs. Mem. at 22; City Defs. Reply Mem. at 9.) Because the court has dismissed all claims against Detective Hogan, the court need not address whether he is entitled to qualified immunity. *See Mitchell v. City of Albany*, No. 08-CV-871, 2010 U.S. Dist. LEXIS 31426, at *20 n.4 (N.D.N.Y. Mar. 31, 2010) (noting that "[b]ecause of this determination, the Court need not, and does not, address Defendants' alternative grounds for dismissal of the malicious prosecution claims, namely . . . that defendants are entitled to qualified immunity on the § 1983 malicious prosecution claims . . . ."); *Blair*, 2009 U.S. Dist. LEXIS 29300, at *32 ("Because this Court has dismissed all claims except for the excessive force claims, the Court addresses Defendants' qualified immunity argument solely as it pertains to Plaintiff's fourth cause of action."); *see also Beecher v. Department of Consumer Prot.*, 274 Fed. Appx. 88, 90 n.2 (2d Cir. 2008) ("As we affirm the dismissal pursuant to Rule 12(b)(6), it is unnecessary to address Appellees' claims of qualified and absolute immunity . . . ."); *Casivant v. County of Columbia*, 101 F.3d 682 (2d Cir. 1996) (declining to address appellees' claims of prosecutorial and qualified immunity where the court found that the complaint was properly dismissed).

denial of a constitutional right." *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (citation omitted).

Here, plaintiff claims that his rights were violated as a result of various alleged policies or customs of defendant City of New York, *inter alia*, of arresting innocent persons notwithstanding differences in physical descriptions between the alleged perpetrator and physical characteristics of the arrested person, doubts as the credibility of complaining witnesses, credible evidence exonerating the arrestees, and subjecting innocent persons to defective police line-ups. (Compl. ¶ 65.) In support of his allegation, plaintiff argues that the existence of such "unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct, as documented" in various civil rights actions "filed against the City" which are set forth in the Complaint. (*Id.* ¶ 66.)

Defendants contend that plaintiff has failed to identify or adduce evidence of "any policy, custom or practice that could have resulted in a violation" of plaintiff's rights. (City Defs. Mem. at 24.) The City thus seeks summary judgment on plaintiff's *Monell* claim.

In response, plaintiff argues that the City's summary judgment motion should be denied because "*Monell* discovery has been bifurcated and it is, therefore, defendants who have produced no information in this regard." (Pl. Mem. at 30.) The

City counters by arguing that *Monell* discovery was never bifurcated and by correctly observing that there are no court orders bifurcating *Monell* discovery. (City Defs. Reply Mem. at 10.)

The parties' dispute regarding whether *Monell* discovery was bifurcated is irrelevant because, as discussed above, plaintiff has not established that he was deprived of any constitutionally protected right. *See Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point."); *see also Rutigliano v. City of New York*, 326 Fed. Appx. 5, 9 (2d Cir. 2009) (affirming summary judgment dismissal of *Monell* claim where court dismissed all of plaintiff's Section 1983 claims); *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) (observing that there must be an underlying constitutional violation to support a *Monell* claim). That is, "[i]f there is no underlying constitutional violation by a municipal official, the municipality is not liable." *Khan v. Ryan*, 145 F. Supp. 2d 280, 285 (E.D.N.Y. 2001); *see also Rae v. County of Suffolk*, No. 07-CV-2738, 2010 U.S. Dist. LEXIS 19921, at *33 (E.D.N.Y. Mar. 5, 2010) (dismissing *Monell* claims against a county where the court dismissed all of the

plaintiff's Section 1983 claims against the county's police officers that were acting in their official capacities). Plaintiff's *Monell* claim must therefore be dismissed.

Although "there are limited exceptions to this rule where the injuries complained of are not solely attributable to the actions of named individual defendants, or where a jury concludes that the individual defendants violated plaintiff's rights but nonetheless enjoy qualified immunity, neither of these exceptions applies here." *See Bonilla v. Jaronczyk*, 354 Fed. Appx. 579, 582 (2d Cir. 2009) (internal quotation marks and citations omitted); *see also Rutigliano*, 326 Fed. Appx. at 9 (observing that a municipality may be found liable under Section 1983 even in the absence of individual liability "only in very special circumstances.") (citing *Barrett v. Orange County Human Rights Comm'n*, 194 F.3d 341, 350 (2d Cir. 1999) (holding that the district court should have permitted the jury to decide whether the municipal defendants were liable irrespective of the liability of the individual defendants where there was evidence that a multi-member commission may have violated the plaintiff's First Amendment rights)).

Here, plaintiff's *Monell* claim is directly derived from Detective Hogan's alleged wrongdoing, which resulted in plaintiff's arrest, prosecution and ultimate acquittal. (*See* Hogan Dep. at 59-60; *see also* Williams 56.1 Stmt. ¶ 45.) There

is no evidence that anyone other than Detective Hogan arrested
plaintiff. (*See id.*) Because there is no evidence that
plaintiff's alleged injuries are attributable to anyone other
than the named defendants, and because the court has found that
plaintiff did not suffer any constitutional injury at the hands
of any individual police officer, the court grants the City's
motion for summary judgment on plaintiff's Section 1983 *Monell*
claim.

## C. Remaining Counts - State Law Claims against Defendants Follett, Solomon and Williams

Plaintiff invokes the court's supplemental
jurisdiction pursuant to 28 U.S.C. § 1367 over his state law
claims against defendants Follett, Solomon and Williams.
(Compl. ¶ 3.) Defendants Solomon and Follett request that the
court decline to exercise supplemental jurisdiction over
plaintiff's state law claims in the event that all federal
claims are dismissed. (Doc. No. 96, Follett's Memorandum of
Law, at 9; Doc. No. 103, Solomon's Memorandum of Law, at 18.)

Title 28 U.S.C. § 1367(a) provides, in pertinent part,
that

> in any civil action of which the district courts
> have original jurisdiction, the district courts
> shall have supplemental jurisdiction over all
> other claims that are so related to claims in the
> action within such original jurisdiction that
> they form part of the same case or controversy
> under Article III of the United States
> Constitution.

28 U.S.C. § 1367(a).  Subsection (c) provides, however, that

> The district courts may decline to exercise
> supplemental jurisdiction over a claim under
> subsection (a) if —
>
> (1) the claim raises a novel or complex issue
> of State law,
>
> (2) the claim substantially predominates over
> the claim or claims over which the district court
> has original jurisdiction,
>
> (3) *the district court has dismissed all
> claims over which it has original jurisdiction*,
> or
>
> (4) in exceptional circumstances, there are
> other compelling reasons for declining
> jurisdiction.

28 U.S.C. § 1367(c) (emphasis added).  "In providing that a

district court "may" decline to exercise such jurisdiction, this

subsection is permissive rather than mandatory." *Valencia v.

Lee*, 316 F.3d 299, 305 (2d Cir. 2003) (citation omitted).  The

Supreme Court has counseled that "in the usual case in which all

federal-law claims are eliminated before trial, the balance of

factors to be considered under the pendent jurisdiction doctrine

- judicial economy, convenience, fairness, and comity - will

point toward declining to exercise jurisdiction over the

remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*,

484 U.S. 343, 350 n.7 (1988); *see also Valencia*, 316 F.3d at 305

(quoting *Cohill* with approval).  This is such a case.  The

interests of judicial economy, fairness, convenience and comity

will best be served by declining to exercise further
supplemental jurisdiction over plaintiff's state law claims
against the remaining defendants.  Accordingly, the court grants
the request of defendants Solomon and Follett and declines to
exercise jurisdiction over plaintiff's remaining state law
claims, which are dismissed without prejudice.  *See United Mine
Workers v. Gibbs*, 383 U.S. 715, 725-26 (1966) (holding that,
where all federal claims have been dismissed before trial,
pendent state claims should be dismissed without prejudice and
left for resolution by the state courts); *Giordano v. City of
New York*, 274 F.3d 740, 754 (2d Cir. 2001) (vacating lower
court's judgment dismissing with prejudice pendant state and
municipal claims and instructing the district court to dismiss
them without prejudice "so that the state courts may adjudicate
those claims in their entirety if the plaintiff chooses to
pursue them in those courts.") (citation omitted); *Nasca v. Town
of Brookhaven*, No. 05-CV-122, 2008 U.S. Dist. LEXIS 73644, at
*51 (E.D.N.Y. Sept. 25, 2008) (granting summary judgment against
plaintiff's federal civil rights claims, declining to exercise
supplemental jurisdiction over claims based upon state
constitution and tort law and dismissing such state claims
without prejudice); *see also Ruston v. Town Bd. for the Town of
Skaneateles*, No. 09-4480-CV, 2010 U.S. App. LEXIS 13920 (2d Cir.
July 8, 2010) (affirming Rule 12(b)(6) dismissal of federal

civil rights claims and dismissal without prejudice of state law claim where the lower court declined to exercise supplemental jurisdiction over the state law claim).  The court makes no finding as to the merits of such claims.

## CONCLUSION

For the foregoing reasons, the City Defendants' motion for summary judgment is granted in its entirety.  Further, the court declines to exercise supplemental jurisdiction over plaintiff's remaining state law claims, which are dismissed without prejudice.  The Clerk of the Court is respectfully directed to enter judgment in accordance with this order and to close this case.

SO ORDERED.

Dated: Brooklyn, New York
       July 13, 2010


_____/s/_____
KIYO A. MATSUMOTO
United States District Judge
Eastern District of New York